Carr, J.
I was very much struck with the arguments of counsel, and their objections taken to the form of the action and the defects of the declaration in this case ; but upon reflection and examination of authorities, I have satisfied myself, 1. That the action of debt may be brought on the statute, it being comprehended in the word bill. 2. That the count first laid in the declaration is good on general demurrer, though I do not believe it could have withstood a special demurrer. It is defective in details, but does not, I conceive, “ omit any thing so essential to the action as that judgment according to law and the very right of the' case cannot be given.” 3. I am of opinion that we ought not to send the case back for a decision on the motion for a new trial; that motion being, as I think, waived by the errors in arrest, and rendered impracticable by the other circumstances which have taken place. I refer to the more extended views of the president in this case, of which I entirely approve, and to the authorities he cites, which I have examined.
*483 Tucker, P.
This is an action brought against the ..... sheriff of Fayette under the statute, for partiality m conducting an election to the prejudice of the plaintiff, who was a candidate at the August elections in 1831. The defendant pleaded not guilty, and a jury of the country have negatived that plea, and found him guilty of partiality in the conduct of the election, against the form of the statute. Having failed to acquit himself before his peers of this serious charge, he now seeks to arrest the judgment for the penalty, on the ground that the declaration is defective.
The first objection goes to the foundation of the action. It is contended that the action of debt is not within the provisions of the statute, which only authorize the recovery of the penalty by bill, plaint, or information ; that we have no proceeding by bill or plaint; that the remedy provided thereby is that by information alone; and that where a specific remedy is pointed out by the statute for the recovery of a penalty, that remedy only can be pursued.
It might perhaps be questioned whether this last position, true as it may be as a general principle, would govern this case. For it is laid down in the most ancient authorities, that “though the statute which gives the action for an escape limits the recovery by writ of debt, which imports an original, yet debt by bill against him in custod. mar. will lie; for it is within the equity of the statute.” 1 Roll. 536, l. 50. cited 1 Com. Dig. 438. A fortiori, as debt is the peculiarly appropriate action in these cases (2 Bac. Abr. Debt. A. 13 Petersdorff’s Abr. 281.) it is fair to conclude that if the action given is by bill, the action of debt will lie, by the equity of the statute.
I shall not, however, rest upon this ground. I am of opinion that the act of assembly intended the action of debt, by the language which it has used. That language has been handed down from century to century, *484 having found its way into the early statutes giving actions for the recovery of penalties. This is obvious from the use of the word plaint, which is not designed to refer to proceedings in inferiour courts, but to the court of king’s bench; for we aré told that “anciently the process of trespass in the king’s bench was founded on a plaint or queritur entered on the records of the court.” 1 Tidd 166, 167. But although this proceeding is no longer in use, yet the old formula of enactment as to proceedings under penal statutes, seems to be still retained in England, as well as with us. With respect to the term bill, that term, in law language (as here used) distinctly indicates an action by bill of Middlesex in the court of king’s, bench. This bill of Middlesex was equally applicable to actions of debt, assumpsit &c. but as the action of debt is, as has been shewn, the most approved action for a penalty, where another is not pointed out, so the word bill here would be construed to mean bill in debt, or, in other words, an action of debt in the king’s bench. Now if, in an english statute, debt in the court of king’s bench would be understood by the word bill, how are we to understand it here ? Are we to reject it entirely, or are we not rather to interpret it to mean debt in our courts of record ? It is very well known that in our proceedings we have rather followed the forms of the king’s bench than those of the common pleas; and hence it is that in our courts, as well as in our legislature, we often use phrases which belong to the former rather than to the latter. This very word bill, — though we have no bill of Middlesex, — is used in the same way in our entries as in the king’s bench. Thus when judgment is entered for the defendant, the entry is that the plaintiff take nothing by his bill, but for his false clamour be in mercy &c. The entry in the common pleas would be, “ that the plaintiff take nothing by his writ;" a form which perhaps was not followed with us because we do not commence with an *485 original writ, bat begin the suit with a capias, according to the course of the king’s bench where the defendant resides in Middlesex, 1 Tidd 167.
It is said, however, that in this very statute, in another section, debt and bill are both mentioned. Supp. to Rev. Code, ch. 8S. § 31. The same thing is to be seen in english statutes, 4 and 5 Philip and Mary, cited 6 Co. 19, a.* And the case already cited from Rolle shews that where .debt is mentioned in the statute, it means peculiarly debt by original, that is, debt in the common picas, though by the equity of the statute the court extended it to the bill of Middlesex, that being, in effect, debt by bill in the king’s bench.. There is therefore no incongruity in the english statute, where it gives the remedy both by action of .debt and by bill; since tbe former means debt in the. common pleas, and the latter, debt in the king’s bench, Our statutes indeed, enacted at an early day (in 1784 and 1785) and which ore the prototypes of-tho act in Supp. to Rev. Code, ch. SS. follow this language with no very great propriety; but it is obvious that it was taken, by the learned persons who then drew our statutes, from the familiar phraseology of the british statutes, under the impression that it was safest to follow the established formula. Be this as it. may, we must take it that as the word bill meant debt in the english statute, it must have been designed to mean the same in o.urs. And as to the different phraseology in the two sections, it is easily explained when we attend to the fact, that one of them was enacted in 1784 and the other in 1785. Upon the whole, therefore, I think that the action was properly brought.
*486 I am not less satisfied that the first count of the declaration is good upon general demurrer. It would not have stood the test of a special demurrer indeed, because the defendant might have demanded, if he chose, more certainty and preciseness in the plaintiff’s charge. He might have called upon him for specifications which would have enabled him better to understand the grounds upon which he was to be assailed. This is precisely the object of a special demurrer. It is the mode furnished the defendant, on the one hand, of compelling his adversary to give him fair, full and distinct notice of what, is to be proved against him; and it is the protection furnished the plaintiff, on the other, against objections not going to the gist but only to the form of the action, which the defendant, in all fairness, should disclose, that they may be amended, instead of concealing and withholding them for the purpose of securing him against a judgment, in the event of a decision against him by his peers. This I take to be the true spirit of the statute of jeofails, in providing that upon demurrer “the court shall regard no other defect or imperfection in the writ, return, declaration or pleadings, than what shall be specially alleged in the demurrer as causes thereof, unless something so essential to the action or defence be omitted, as that judgment according to law and the very right of the case cannot be given.” In this case every essential to the action is stated; and whether imperfectly or not, is unimportant ; for the distinction is between an imperfect or informal statement of a good cause of action, and the statement, however formally made, of a defective cause of action. The plaintiff sets forth that he sues qui tarn; he demands the precise penalty imposed by law ; he states that at the August elections for Fayette in 1831, he was a candidate for the house of delegates, and that the defendant, being sheriff and conductor of the election, did interfere and shew partiality in favour *487 of other candidates and against him, “by advising and urging persons to vote against him, and by refusing to receive votes of persons known to be favourable to him, though duly qualified, and urging their right to be heard in the said election, and to have their votes received and recorded in his favour.” What is there omitted in this declaration, so essential to the action, as that judgment according to law and the very right of the case cannot be given ? I do not perceive. The facts of the election being held, of Sims being a candidate, and of Alderson being sheriff are indeed set forth by way of recital, as they might well be '; but the fact that the defendant did interfere and shew partiality, which is the gist of the action, is set forth directly and not by way of recital ; and the cases agree that this is sufficient. Fulgham v. Lightfoot, 1 Call 250. Moreover, this allegation is in the very language of the act, and it is followed by the specification that the defendant interfered by advising and urging persons to vote against the plaintiff. I say nothing of the other specification, as wanting perhaps some ingredients to render it complete. But the first is sufficient; and though on special demurrer it would be considered too general, as the defendant had a right to know what particular persons he was charged with advising, in order to enable him the better to defend himself, yet as he did not choose to demur specially, he cannot be received to make the objection on general demurrer. I am therefore of opinion that the court properly overruled the demurrer, and a fortiori, most improperly arrested the judgment. It must therefore be reversed, and judgment entered for the plaintiff, without regard to the motion for a new trial, which the defendant must be considered as waiving by moving in arrest of judgment. It is well settled that a party cannot move for a new trial after a motion in arrest (4 Barn. & Cres. 160.) and though in this case the motions were probably simultaneous, yet as the party has, upon *488 his motion, actually had the judgment arrested erroneill* . r ously, he cannot now go back to his motion lor a new trial. It is not perceived how this consequence can be avoided. This court, in reversing the judgment in arrest, must give judgment for the plaintiff, which at once occludes the motion for a new trial; nor do I see how we could reverse and send the cause back for the court to consider that motion. Such a practice would lead to embarrassing difficulties and serious consequences, particularly, as it respects the county courts,'since the same court that tried the -cause could rarely be assembled to pronounce on the motion ;• and indeed it would- be mischievous'in the.extreme, if even-the same judge, after a lapse-of years, was called upon to decide it, and to sign a bill 'of exceptions setting forth the facts.
I am therefore, on the whole, of opinion to reverse the judgment, and enter judgment for the plaintiff.
The other judges concurring, judgment of circuit court reversed, and judgment entered for the plaintiff

 Note by the president. See also 21 James 1. ch. 4. where the terms used aro “action, bill, plaint or information;” and Id. ch. 22. § 46. where the words used are “debt, bill, plaint or information.” These statutes are quoted 4 T. R. 66, 70.